UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────────

№ 24-CV-3628 (RER)

─────────────────────

DAVID CAMEO

versus

AMAZON.COM SERVICES LLC
─────────────────────
**MEMORANDUM & ORDER**
─────────────────────

**RAMÓN E. REYES, JR., District Judge:**

    David Cameo sought to discharge in bankruptcy over $2 million he owed to Amazon.com Services LLC through his role as a third-party seller on the e-commerce platform. In an adversary proceeding before the Honorable Jil Mazer-Marino, U.S. Bankruptcy Judge, E.D.N.Y., Amazon successfully moved for summary judgment declaring the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), because Cameo had committed actual fraud. Cameo appeals, arguing the Bankruptcy Court improperly granted summary judgment by relying on improper assumptions and determinations of credibility. After carefully reviewing the record, and for the reasons set forth herein, the Court affirms the Bankruptcy Court's order and judgment, and the appeal is **DENIED**.

**BACKGROUND**

I.    <u>Factual Background</u>

    Debtor David Cameo ("Cameo" or "Appellant") founded and owned several businesses related to retail and wholesale of electronics. He established his solo

company Jersey Cameras 2 Inc. ("Jersey Cameras 2") in 2016 to sell high end wholesale cameras, computers, and drones online through Amazon Marketplace, Amazon's third-party seller platform. (ECF No. 2, Record on Appeal ("R.A.") at 154 ¶13; 284; ECF No. 3, Add. Record on Appeal ("Add. R.A.") at 11 ¶ 3),). He established the company as a third-party seller on Amazon's Marketplace by purchasing an Amazon seller account from another business. (R.A. at 163 ¶¶ 22–24; 164 ¶¶ 9–18). In this model, a third-party seller takes orders from customers and then Amazon remits funds to the seller. (*Id.* at 52). While sellers are responsible for their non-performance, mistake, or misconduct, Amazon also guarantees every purchase a customer makes through a third-party seller in their "A-to-Z Guarantee." (*Id.* at 52–53, 64). Accordingly, Amazon issues refunds when the seller does not respond to a customer's issue with the merchandise. (*Id.* at 64). The agreement between Amazon and third-party sellers provides that if a seller delvers defective or nonconforming goods, or engages in fraud, Amazon may withhold payments to the seller, otherwise charge the seller for those amounts, permanently withhold payments, or terminate or suspend the seller's account. (*Id.*).

From October to December 2018, thousands of customers submitted feedback on their orders from Jersey Cameras 2, stating they received either the wrong merchandise, or nothing at all, instead of the high-end electronics they had purchased. (*Id.* at 43 ¶ 15; 208 ¶ ¶ 2–9). Amazon alleges that Cameo engaged in a "hit-and-run" scheme of accepting payment from customers, not fulfilling orders, not responding to complaints, and effectively making off with the money. (*Id.* at 5; ECF No.7 (Amazon Br.") at 14). This kind of scheme can also involve shipping lesser-value goods instead of the high-end item a customer purchased and similarly ignoring complaints to resolve the issue or claiming

the customer did receive what they ordered. (R.A. at 43 ¶ 14). Amazon contends its algorithm flagged Jersey Camera 2's account based on the volume of complaints, it issued warnings, and upon further review, it suspected misconduct and terminated Cameo's accounts. (*Id.*) As a result of Jersey Camera 2's alleged scheme, Amazon paid $2,183,162.40 in customer refunds. (*Id.* at 45 ¶ 21).

Cameo does not dispute the customer complaints, but alleges that the incorrect orders resulted from a big mistake: during the 2018 busy end-of-year shopping season, he started using a new shipping software called ShipStation to automate what he had previously been doing on his own, hired some temporary workers to assist from a person named "Alicia", printed a list of orders and corresponding labels backwards, and then the workers shipped expensive items to customers who ordered cheap ones or vice versa. (*Id.* 161 ¶¶ 1–24, 203–05; ECF No. 6 ("Cameo Br.") at 3–4). He claims he started to address the complaints, but Amazon then terminated his account based only on an algorithm. (*Id.*) He also asserts Amazon held onto $300,000 from his seller account that he would have used to issue refunds. (Add. R.A. at 122 ¶¶ 22–25; Cameo Br. at 16).

As evidence, Cameo offered his own deposition testimony, but no other corroborating evidence for the shipping issues. The customer complaints do not indicate that any customers ordered low-end items from Jersey Cameras 2, nor that Cameo fulfilled any orders of high-end goods, even if they shipped to the wrong person, nor does he offer any evidence of having purchased high-end goods to resell. He also offers no evidence of Amazon relying solely on its algorithm to terminate his account or making any accounting mistake to show that they owe him $300,000.

Before this alleged mistake or scheme, and around the time Cameo founded Jersey Cameras 2 in 2016, he also founded and managed Cameo Distributions Inc. as a wholesale company and consulting firm. (R.A. at 149 ¶¶ 5–7). He either owned 100% of the company or shared it with his brother who owned 15% (*Id.* at 266 ¶ 17; Add. R.A. at 499 ¶¶ 12–14). Cameo used this company to "buy and flip" electronics and jewelry and assist clients to become Amazon sellers. (R.A. at 270 ¶¶ 9–17). This included serving as a broker for clients to purchase an Amazon seller account form an existing Amazon seller, despite Amazon's prohibition of such a practice. (*Id.* at 149 ¶¶ 5–18; 57).

Later in 2016, Cameo paused his Jersey Cameras 2 business and joined his brother Ari Cameo's business, Digital Direct and More Inc. ("Digital Direct"), which sold electronics and accessories online and wholesale. (*Id.* at 179 ¶¶ 13–25). Cameo and his brother were equal shareholders in the company, but Cameo never received any monetary benefits of any kind from the business. (*Id.*) Cameo's wife, Shoshana Ostran ("Ostran"), began working for Digital Direct around that same time. (Cameo Br. at 15; Amazon Br. at 16). Over the next two years, Ostran's salary increased from $100,000 to $400,000. (*Id.*)  In March 2018, Cameo left Digital Direct, transferred his shares back to his brother for $1, and resumed operations at Jersey Cameras 2. (R.A. at 190 ¶¶ 8–25; 248 ¶¶ 19–20; Add. R.A. at 20 ¶ 42).

From February to December 2018, Digital Direct transferred $3,388,841, allegedly for the purchase of merchandise, to Cameo Distributions, Cameo's wholesale and consulting company. (Add. R.A. at 19 ¶ 36). From March to December 2018, Cameo Distributions transferred $16,000 to a vacation club company, a total of $410,000 in multiple transfers to Cameo's and Ostran's joint bank account, and $12,634 to a Lexus

4

car dealer. (R.A. at 271 ¶¶ 14–22; Add. R.A. at 582, 608). Ostran also made a 20% downpayment for the family's $2 million dollar home around this time, and allegedly also received a more than $200,000 loan from Cameo Distributions towards the downpayment. (Add. R. A. at 354 ¶¶ 11–14). Ostran also owns 51% membership interest in three LLCs that acquired properties in New Jersey. (R.A. at 218 ¶¶ 6–10, 14, 19; Add. R.A. at 20 ¶ 39). Those LLCs are co-owned with Cameo's brother and another individual, and Cameo is listed as a Manager or Designated member and signatory on the LLCs' bank accounts. (Add. R.A. at 20 ¶ 39). On June 21, 2018, Digital Direct—Cameo's brother's company—paid $442,981.94 for one of the LLC properties, followed by a same day transfer of $150,000 from Cameo's and Ostran's joint account to Cameo Distributions, and then a transfer of $300,000 from Cameo Distributions to Digital Direct. (Add. R.A. at 20 ¶ 39; 329 ¶¶ 9–12).  On July 13, 2018, $259,000 was transferred from Cameo Distributions to another one of the LLC property accounts, and then returned, along with a separate payment of $258,965.49 from Cameo Distributions to a real estate attorney. (R.A. at 245 ¶¶ 8–25; 249 ¶¶ 2–7). By 2021, Ostran was making a salary of $480,000 at Digital Direct, had purchased a Ferrari outright, and leased an Escalade. (Add. R.A. at 20–21 ¶ 42; 273 ¶¶ 21–24).

      Also in 2018, Cameo opened a second Amazon seller account to sell refurbished merchandise. (R.A. at 274 ¶¶ 6–16). Jersey Cameras 2 allegedly purchased all its inventory from Digital Direct per an exclusivity agreement between the brothers, and Cameo packages and shipped the orders himself. (*Id.* 186 ¶¶ 5–25). Jersey Cameras 2 usually paid invoices from Digital Direct anytime from two weeks to thirty days after receiving an invoice. (*Id.* at 175 ¶¶ 14–16). This timing also depended on when Amazon

5

disbursed funds to Jersey Cameras 2. (*Id.*) In March to December 2018, though, Jersey Camera 2 transferred funds received from Amazon immediately to Digital Direct. (Add. R.A. at 515 ¶¶ 14–18). This continued through January 2019 and totaled $2,477,150.26. (*Id.*)

II.     Procedural History

On October 16, 2019, Amazon filed an arbitration against Cameo, Jersey Cameras 2, and other entities for committing fraud. (*Id.* at 21 ¶ 47). On May 10, 2021, the arbitrator entered an order imposing various adverse inferences against Cameo and others. (*Id.* at 22 ¶ 52). On July 13, 2021, David Cameo filed a voluntary petition for relief under chapter 7, which stayed the arbitrator from issuing a final award. (*Id.* at 23 ¶ 54; *see In re Cameo*, Case No. 21-41803-jmm, (Bankr. E.D.N.Y.). In his bankruptcy petition, Cameo claimed he had not received income since 2019 and valued his assets at $3,700. *In re Cameo*, Case No. 21-41803-jmm at ECF 62. On October 12, 2021, Amazon commenced its adversary proceeding against Cameo. *See Amazon v. Cameo*, Adv. Pro. No. 21-01180-jmm (Bankr. E.D.N.Y.). On November 6, 2023, Amazon moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *In re Cameo*, 661 B.R. 275, 278 (Bankr. E.D.N.Y. 2024). Other creditors also filed adversary proceedings against Cameo, disputing the discharge of debts Cameo owed to them. *See Dialectic Distribution LLC v. Cameo et al.*, Adv. Pro. 22-1054-jmm (Bankr. E.D.N.Y.); *Strategic Funding Source, Inc. d/b/a Kapitus v. Cameo*, Adv. Pro. 22-1066-jmm (Bankr. E.D.N.Y.). On July 11, 2022, the chapter 7 trustee commenced an adversary proceeding for fraud against Ostran and Cameo's brother. *See Doyaga v. Cameo et al.*, Adv. Pro. No. 22-1053-jmm (Bankr. E.D.N.Y.). That proceeding ended in a settlement agreement of $460,000. *See Id.*

On April 30, 2024, the Bankruptcy Court granted Amazon summary judgment on its claim that the $2,183,162.40 owed to it by David Cameo is nondischargeable under Bankruptcy Code section 523(a)(2)(A) as a debt obtained by actual fraud. *In re Cameo*, 661 B.R. at 298. The Bankruptcy Court considered extensive evidence, including: Amazon's agreement terms with third-party sellers and it's "A-Z Guarantee" to customers; Amazon's record of customer orders placed to Jersey Cameras 2; Amazon's record of customer complaints, including those Cameo identified as evidence that he shipped high-end items; depositions of David Cameo, his brother Ari Cameo, and his wife Shoshana Ostran; corporate documents for David Cameo's and his brother's companies; the exclusivity agreement between Jersey Cameras 2 and Digital Direct; the declaration and deposition of Amazon's risk manager, John Rutledge;  the declaration ,deposition, and expert report of Anthony Bracco, a financial expert retained by Amazon; the declaration, deposition, and expert rebuttal report of Gary Lampert, a financial expert retained by Cameo; and the arbitration proceedings between the parties. *Id.* at 292–96. The bankruptcy court also described evidence Cameo failed to produce: any record of customer orders for Jersey Cameras 2; any invoices between Jersey Cameras 2 and Digital Direct; any records of inventory purchase by Digital Direct; any record, data, or details about the date and specifics of ShipStation errors or hiring of agency workers from "Alicia." *Id.* After a careful ten-time reprise of "there is no evidence," the Bankruptcy Court fittingly concluded, "David Cameo has not provided the Court with evidence raising a genuine issue as to any material facts." *Id.* at 292–98.

Cameo filed his appeal on May 15, 2024. (ECF No. 1). The parties filed the Record on Appeal on June 7, 2024 (ECF No. 2, R.A.), and an Additional Record on Appeal on June 25, 2024 (ECF No. 3, Add. R.A.). Cameo filed his brief in support of appeal on August 15, 2024 (ECF No. 6, Cameo Br.), Amazon opposed (ECF No.7, Amazon Br.), and Cameo replied (ECF No. 10, Cameo Reply). Cameo appeals the judgment and monetary award, arguing the Bankruptcy Court improperly relied on impermissible assumptions and determinations of credibility. Amazon contends the Bankruptcy Court did not err in its factual findings or legal conclusions, and made permissible reasonable inferences based on undisputed facts.

## **LEGAL STANDARDS**

A district court has jurisdiction to hear appeals from bankruptcy court final judgments, orders, and decrees. 28 U.S.C. § 158(a). In doing so, the district court accepts the bankruptcy court's factual findings unless clearly erroneous, but reviews legal conclusions *de novo*. *In re Lorick*, 634 B.R. 220, 223 (E.D.N.Y. 2021) (citing *In re Belmonte*, 931 F.3d 147, 152 (2d Cir. 2019)). "While the trial court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden." *In re Belmonte*, No. 17-CV-2494 (JMA), 2018 WL 10691583, at *4 (E.D.N.Y. June 7, 2018), *aff'd*, 931 F.3d 147 (2d Cir. 2019). This is because a factual finding is not clearly erroneous unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 449 (2d Cir. 2008).

Summary judgment is proper only where, in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56 (a); *United States v. Schiller*, 81 F.4th 64, 67 (2d Cir. 2023). This standard also applies in adversary proceedings in bankruptcy. Fed. R. Bankr. P. 7056; *In re Dana Corp.*, 574 F.3d 129, 146 (2d Cir. 2009). The trial court considers "all pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to determine whether there is a genuine issue of material fact. *In re Lavender*, 399 F. App'x 649, 651 (2d Cir. 2010) (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002)); Fed.R.Civ.P. 56(c). Resolution of credibility conflicts and the choice between conflicting versions of the facts are not matters for the district court on summary judgment. *Williams v. City of New York*, No. 06-CV-6601 (NGG), 2009 WL 3254465, at *8 (E.D.N.Y. Oct. 9, 2009) (citations omitted); *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003). However, to demonstrate a genuine issue of a material fact, a non-movant "must offer some hard evidence showing that its version of events is not wholly fanciful." *Famosa, Corp. v. Gaiam, Inc.*, No. 11 Civ. 5703 (KBF), 2012 WL 573999, at *2 (S.D.N.Y. Feb. 22, 2012) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998); see also *Brown v. City of New York*, 201 F. Supp. 3d 328, 330 (E.D.N.Y. 2016) ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citing *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.2010)) (quotations and alteration omitted).

## DISCUSSION

11 U.S.C. § 523(a)(2)(A) provides that a debt obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable in bankruptcy. "'[A]ctual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes . . .", namely "a transfer scheme designed to hinder the collection of debt." *Husky Int'l Elecs.,*

*Inc. v. Ritz*, 578 U.S. 355, 359–60 (2016). Rather than direct proof, evidence of such fraud is often found through "badges of fraud," or "circumstances that support an inference of intent because they are commonly associated with fraudulent transfers." *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG) (SMG), 2018 WL 6718680, at *8 (E.D.N.Y. Nov. 6, 2018); *In re Boyer*, 328 F. App'x 711, 715 (2d Cir. 2009).

These "badges of fraud" include: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *In re Boyer*, 328 F. App'x 711, 715 n.2 (2d Cir. 2009) (citing *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir.1983)). "The transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property" and "[t]he shifting of assets by the debtor to a corporation wholly controlled by him" may also indicate intent to defraud. *In re Kaiser*, 722 F.2d at 1583. A court considers the totality of circumstances, and a "debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." *In re Boice*, 149 B.R. 40, 47 (Bankr. S.D.N.Y. 1992) (citations omitted).

Cameo contends that his testimony alone is sufficient evidence to genuinely dispute the material facts on which the Bankruptcy Court made its decision. But the record, and Cameo's briefs on appeal, make clear he does not dispute that some customers received incorrect low-end products instead of what they ordered. (Cameo

Reply at 1; Add. R.A. at 14 ¶¶ 16–17). He does not dispute that numerous customers lodged complaints, many of them about either receiving low-price items or nothing at all instead of the drones, laptops, or cameras they ordered. (Cameo Reply at 3; Add. R. A. at 15 ¶¶ 20–21). He does not dispute that he owes a large debt to Amazon, save the $300,000 he claims Amazon was improperly holding, for which he produces no evidence in support. (Add. R.A. at 16 ¶¶ 24–25; 122 ¶¶ 22–25). And although he disputes the nature of the transfers, he does not dispute transfers of high sums of money to his brother's company, LLCs in his wife's and brother's names, or back and forth between the various associated companies. (Add. R.A. at 18–20 ¶¶ 32–41).

      Instead, Cameo asserts, on his deposition alone, that it is all the result of an honest mistake on the part of a small business—just one man, a laptop, and a shipping list gone wrong—and Amazon's premature closing of his third-party seller accounts, alongside legitimate transfers of money between various family businesses. (R.A. at 173 ¶ 9; Cameo Reply at 1). But Cameo offers no "hard evidence" to support his perhaps "fanciful" version of events. *See Famosa*, 2012 WL 573999, at *2. He offer no record of sales to customers ordering lower-end items such as USB bracelets; nor invoices to show his company purchased high-end items from his brother's company; nor a record of shipping any high-end items to customers who ordered them; nor any details about when or how the order list and shipping labels were mixed up; nor any record of hiring temporary workers from "Alicia"; nor evidence of those workers making errors; nor evidence that Amazon only relied on an algorithm to close his accounts; nor any evidence of resolving, or intending to resolve, outstanding customer complaints and refunds; nor evidence of any accounting errors on Amazon's part regarding his debt. His own "unsupported assertions of his

honest intent" cannot, and do not, overcome the "natural inferences" a court may make from the undisputed facts. *See In re Boice*, 149 B.R. at 47.

Alongside the uncontroverted facts that customers complained about the aggregate millions of dollars' worth of high-end items they ordered but did not receive, and that Amazon refunded those customers, the Bankruptcy Court's inferences of fraud properly stemmed from a consideration of the totality of circumstances. Cameo's third-party seller company transferred nearly $2 million dollars to his brother's company, but Cameo offers no record of an exchange of goods. *See In re Kaiser*, 722 F.2d at 1582 ("lack or inadequacy of consideration"). He transferred all his company's cash to his brother's company, which his brother then transferred to another company Cameo himself owns, and his brother also paid Cameo's wife an extraordinarily high salary. *See Id.* ("family, friendship or close associate relationship between the parties [and] shifting of assets to a corporation wholly controlled by [the debtor]"). Cameo's wife used her high salary to purchase their $2 million family home where Cameo lives, a luxury vehicle for herself, jewelry, vacations, real estate properties under LLCs that Cameo manages, and to lease a luxury vehicle Cameo drives. *See Id.* ("retention of possession, benefit or use of the property in question [and] transfer of property by the debtor to his spouse while retaining use of the property"). He was unable to satisfy his debt to Amazon and ultimately filed for bankruptcy, but his wife owned their home and other luxury assets and retained ownership interests in other real property. *See Id.* at 1582–83 ("financial condition of the party sought to be charged both before and after the transaction in question [and] existence or cumulative effect of a pattern or series of transactions or course of conduct

after the incurring of debt, or pendency or threat of suits by creditors, and [] the general chronology of events").

Further, there is no question that David Cameo, as the sole proprietor of Jersey Cameras 2 (Add. R.A. at 11 ¶ 3), would be individually responsible for the debt to Amazon. Cameo doesn't dispute this; he just would like the Court to—perhaps unreasonably—infer that his $2 million scheme was just a $2 million mistake; one he intended to remedy, if only Amazon would have let him. With no evidence from Cameo to support such a contention and thereby genuinely dispute the material facts at hand, the Bankruptcy Court made reasonable inferences—not assumptions—of fraud. In doing so, it did not make a determination of credibility, but an assessment of undisputed material facts, supported by evidence, that led to those inferences. Cameo had the burden to produce evidence to dispute those facts, and he failed to do so.

In reviewing the entirety of the record, the Court has nowhere near a "firm conviction that a mistake was made" in the Bankruptcy Court's factual findings. *See In re CBI Holding Co., Inc.*, 529 F.3d at 449. On a *de novo* review of the applicable law, this Court reaches the Bankruptcy Court's same conclusions. Though writers and artists the world over have quibbled about how much stealing of others' work constitutes fraud, the Court need not be so ponderous here. Amazon established that there is no genuine dispute of material fact, and the totality of circumstances supports an inference of actual fraud. Accordingly, Cameo's appeal from the Bankruptcy Court's order granting Amazon's motion for summary judgment is denied.

**CONCLUSION**

For the reasons set forth above, Cameo's appeal is denied. The Clerk of Court is directed to close the case.

SO ORDERED.

Hon. Ramón E. Reyes, Jr. Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.09.29 17:58:53 -04'00'

RAMÓN E. REYES, JR.
United States District Judge

Dated: September 29, 2025
         Brooklyn, New York